# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC DEAN GRAHAM,<br><br>Defendant. | No. CR09-3026-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

On June 18, 2009, the grand jury indicted the defendant Eric Dean Graham in one count of possession of a firearm by a person previously convicted of a felony. *See* Doc. No. 1. On August 12, 2009, Graham filed a motion to suppress evidence; specifically, the firearm forming the basis of the Indictment. Doc. No. 20. The plaintiff (the "Government") resisted the motion on September 17, 2009. Doc. No. 26. Pursuant to the Trial Management Order, motions to suppress were assigned to the undersigned for the holding of any necessary evidentiary hearing, and the preparation of a report and recommended disposition of the motion. Doc. No. 7, § IV.A.

The undersigned held a hearing on Graham's motion on September 23, 2009. Graham was present with his attorney, Roger Sutton. The Government was represented by Assistant United States Attorney Timothy T. Duax. The following exhibits were admitted without objection, to-wit: **Gov't Ex. 1** - a report from the Hancock County Sheriff's Office dated September 14, 2007, regarding a stolen skid loader; **Gov't Ex. 2** - Application for Search Warrant dated April 21, 2009; magistrate's Endorsement; Search Warrant; Return of Service; and Items Seized Report (8 pages); **Gov't Ex. 3 -** Application for Search Warrant dated April 23, 2009; magistrate's Endorsement; Search Warrant; Return of Service; and Items Seized Report (11 pages); **Gov't Ex. 4 -** a second Application for Search Warrant dated April 23, 2009; magistrate's Endorsement; Search Warrant;

Return of Service; and Items Seized Report; and **Gov't Ex. 6 -** Clear Lake Police Department Incident Report dated May 24, 2006, regarding theft of a ski loader. (All of these exhibits were filed under seal at Docket No. 29.)

The background facts are undisputed, and therefore, neither party offered the testimony of witnesses at the hearing. On or about February 2, 2009, a concerned citizen (now known to be Graham's son) called the Hancock County Sheriff's office with information concerning a 2003 Caterpillar skid loader that had been stolen from Ventura, Iowa, in the spring of 2006. The caller stated he had helped Graham steal the skid loader, and the skid loader could be found on Graham's property in Garner, Iowa. The caller also described some identifying markings on the skid loader, and he gave additional information relating to possible insurance fraud by Graham in connection with the skid loader.

Deputy Robert Gerdes, who spoke with the caller, took actions to corroborate the information provided by the caller. Among other things, he confirmed that a skid loader like the one described by the caller had, in fact, been stolen, and he confirmed that Graham was in possession of a skid loader that matched the description given by the caller.

On April 21, 2009, Gerdes prepared an application for a search warrant to search for the skid loader and certain documents relating to the skid loader and the suspected insurance fraud. The magistrate found probable cause and issued a search warrant that provided as follows:

> Proof has been made before me, as provided by law on this date that: (description of property) 2003 Caterpillar 246 Turbo Skid Loader V.I.N. CAT00246C5SZ08084, Caterpillar yellow in color, "GSI" painted on side, #1 painted on side, pictures attached; any personal records of Eric Graham or business records of GSI located on the property of Eric Graham pertaining to the ownership or insurance coverage for a skidloader; and any business records or documents related to claim of loss related to a reported theft of a skidloader in the late summer or early fall of 2007, including but not limited to, statements of Eric Graham or agents of GSI, proof of

2

> payments received by Eric Graham or agents of GSI and claim forms or attachments to any such documents, is being kept at (description of location and address) a white single-family/owner occupied house, a white outbuilding, a redish-brown outbuilding, and any other outbuildings located at [address redacted] in the possession of Eric Dean Graham date of Birth [redacted], Social Security number [redacted] and has been or is being held in violation of the laws of this State, and you are commanded to make immediate search for the said property at the location and persons so stated.
>
> If the property or any portion of the property is found, you are commanded to seize the property and bring it before me.

Gov't Ex. 2, p. 5.

During execution of the warrant, officers went into Graham's bedroom and looked through drawers and shelves, attempting to locate any documents or business records described in the warrant. When they opened a door to a shelf behind Graham's bed, they found a handgun and ammunition. They knew Graham was a convicted felon and, therefore, that it was illegal for him to possess a firearm. They also found some illegal drugs and drug paraphernalia. They then obtained a second search warrant authorizing the seizure of the weapon, drugs, and drug paraphernalia. They later obtained a third search warrant based on items they had seen during execution of the second search warrant.

Graham argues the first search warrant was not supported by probable cause. He argues the magistrate relied on the uncorroborated statements of the caller, as set forth in Gerdes's affidavit, with no evidence that the caller was credible or reliable. Graham further argues that even if the first search warrant was supported by probable cause, its scope did not allow officers to search his residence. At the hearing, defense counsel framed the issue as whether the first warrant sufficiently described the Graham residence and the location of the documents. He argues the warrant described the buildings on Graham's property as possible locations where the skid loader might be found, and it was the skid loader the officers were seeking. Because the second and third search warrants

arose directly from items seen during execution of the first search warrant, Graham argues all evidence resulting from the second and third search warrants should be suppressed. Graham also argues Gerdes is not protected by the good faith doctrine of *United States v. Leon*, 468 U.S. 897, 704 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), because he "had no reasonable grounds for believing the search warrant was properly issued." Doc. No. 20-2, p. 6.

"Under *Leon*, 'the Fourth Amendment exclusionary rule is not to be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid.'" *United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007), *cert. granted and judgment vacated on other grounds*, *Pruett v. United States*, ___ U.S. ___, 128 S. Ct. 1473, 170 L. Ed. 2d 294 (2008) (quoting *United States v. Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004)). If the good-faith exception to the exclusionary rule applies, then it is not necessary for the court to engage in a probable cause analysis. *Id.* (citing *United States v. Rodriguez*, 484 F.3d 1006, 1011 (8th Cir. 2007)).

The *Pruett* court explained the good-faith exception, and the circumstances under which it does not apply, as follows:

> Thus, evidence seized in carrying out a search warrant should not be suppressed on account of an absence of probable cause when an officer's reliance on the warrant is objectively reasonable. *Hessman*, 369 F.3d at 1020. The *Leon* exception does not apply, however, in four circumstances: (1) when "the issuing magistrate wholly abandoned his judicial role," (2) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" (3) when the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," and (4) when the issuing magistrate was misled by false information in an affidavit that

4

> the affiant knowingly or recklessly included. *Leon*, 468 U.S. at 923, 104 S. Ct. 3405 (citations omitted).

*Pruett*, 501 F.3d at 980.

In the present case, none of the four exceptions barring the good-faith exception is present. The issuing magistrate properly relied on Gerdes's affidavit. In the affidavit in support of the warrant application, Gerdes set forth the information he had obtained from the caller and the steps he had taken to corroborate the information. The caller's credibility was bolstered by the fact that he had made statements against his own penal interest; i.e., he "admitted that he and another person assisted Eric Graham with the theft of the skid loader." Gov't Ex. 2, p. 2. The affidavit provided ample information from which the issuing magistrate could have found probable cause. Even if probable cause was lacking, there is nothing to indicate Gerdes and his fellow officers should not have relied on the warrant's sufficiency.

Graham complains that the warrant did not authorize the officers to search his residence because the skid loader could not have been found inside the residence. However, the warrant directs officers to search not only for the piece of equipment itself, but also for any personal or business records or documents relating to ownership, insurance coverage, or a claim of loss. The warrant indicates the items for which officers were to search were "being kept at . . . a white single-family/owner occupied house, a white outbuilding, a red[d]ish-brown outbuilding, and any other outbuildings" located on Graham's property. *Id.*, p. 5. Although the warrant language is "not the model of clarity or a paradigm to be copied by future law enforcement officers," *United States v. Nunley*, 10 Fed. Appx. 386, 2001 WL 574581 (8th Cir. 2001) (internal quotation marks omitted), the court finds there was sufficient probable cause to issue the warrant and sufficient indicia of validity for the executing officers to rely on the warrant, and the warrant adequately described the places the officers were authorized to search.

For these reasons, IT IS RESPECTFULLY RECOMMENDED that Graham's motion to suppress be **denied**. Objections to this Report and Recommendation must be filed **by October 2, 2009**. Responses to objections must be filed by **October 7, 2009**.

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **September 29, 2009, regardless of whether the party believes a transcript is necessary to argue the objection**. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2009.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT