**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ERIC GRAHAM,<br><br>　　　　Defendant. | No. CR09-3026-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
　　　*A.   Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
　　　*B.   Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
　　　*A.   Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
　　　*B.   Objections to Report and Recommendation* . . . . . . . . . . . . . . . . . . . .  10
　　　　　　*1.   Probable cause for first search warrant* . . . . . . . . . . . . . . .  10
　　　　　　*2.   Search exceeding scope of second search warrant* . . . . . . .  13

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

On June 18, 2009, an indictment was returned against defendant Eric Graham, charging defendant Graham with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On August 12, 2009, defendant Graham filed a Motion to Suppress. In his motion, defendant Graham seeks to suppress evidence obtained during a search of his residence that was conducted pursuant to a search warrant. Defendant Graham challenges the legality of the initial search warrant for his residence on the ground that it was overbroad and lacking the requisite particularity. Defendant Graham further seeks to suppress evidence obtained during the execution of a second and third search warrant on the ground that those warrants contained the fruits of the initial illegal search.

Defendant Graham's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). After conducting an evidentiary hearing, Judge Zoss filed a Report and Recommendation on September 28, 2009, in which he recommends that defendant Graham's motion to suppress be denied. Judge Zoss concluded that there probable cause to support the warrant in the present case, and that even if the search warrant affidavit's content was insufficient to establish probable cause for a search of defendant Graham's residence, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984) because it was not objectively unreasonable for the law enforcement officers here to proceed to execute the warrant under the circumstances. Therefore, Judge Zoss recommended that defendant Graham's motion to suppress be denied. Defendant Graham has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary

review of Judge Zoss's recommended disposition of defendant Graham's motion to suppress.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On or about February 2, 2009, a concerned citizen (now known to be Graham's son) called the Hancock County Sheriff's office with information concerning a 2003 Caterpillar skid loader that had been stolen from Ventura, Iowa, in the spring of 2006. The caller stated he had helped Graham steal the skid loader, and the skid loader could be found on Graham's property in Garner, Iowa. The caller also described some identifying markings on the skid loader, and he gave additional information relating to possible insurance fraud by Graham in connection with the skid loader.
>
> Deputy Robert Gerdes, who spoke with the caller, took actions to corroborate the information provided by the caller. Among other things, he confirmed that a skid loader like the one described by the caller had, in fact, been stolen, and he confirmed that Graham was in possession of a skid loader that matched the description given by the caller.
>
> On April 21, 2009, Gerdes prepared an application for a search warrant to search for the skid loader and certain documents relating to the skid loader and the suspected insurance fraud. The magistrate found probable cause and issued a search warrant that provided as follows:
>
>> Proof has been made before me, as provided by law on this date that: (description of property) 2003 Caterpillar 246 Turbo Skid Loader V.I.N. CAT00246C5SZ08084, Caterpillar yellow in color, "GSI" painted on side, #1 painted on side,

> pictures attached; any personal records of Eric Graham or business records of GSI located on the property of Eric Graham pertaining to the ownership or insurance coverage for a skidloader; and any business records or documents related to claim of loss related to a reported theft of a skidloader in the late summer or early fall of 2007, including but not limited to, statements of Eric Graham or agents of GSI, proof of payments received by Eric Graham or agents of GSI and claim forms or attachments to any such documents, is being kept at (description of location and address) a white single-family/owner occupied house, a white outbuilding, a redish-brown outbuilding, and any other outbuildings located at [address redacted] in the possession of Eric Dean Graham date of Birth [redacted], Social Security number [redacted] and has been or is being held in violation of the laws of this State, and you are commanded to make immediate search for the said property at the location and persons so stated.
>
> If the property or any portion of the property is found, you are commanded to seize the property and bring it before me.

Gov't Ex. 2, p. 5.

During execution of the warrant, officers went into Graham's bedroom and looked through drawers and shelves, attempting to locate any documents or business records described in the warrant. When they opened a door to a shelf behind Graham's bed, they found a handgun and ammunition. They knew Graham was a convicted felon and, therefore, that it was illegal for him to possess a firearm. They also found some illegal drugs and drug paraphernalia. They then obtained

4

>     a second search warrant authorizing the seizure of the weapon,
>     drugs, and drug paraphernalia. They later obtained a third
>     search warrant based on items they had seen during execution
>     of the second search warrant.

Report and Recommendation at pp. 2-3. Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Graham.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of the
> court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.
> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III
> judge of any issue need only ask. Moreover, while the statute
> does not require the judge to review an issue *de novo* if no
> objections are filed, it does not preclude further review by the
> district judge, *sua sponte* or at the request of a party, under a
> *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th

6

Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the

record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and

8

recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665,

(continued…)

As noted above, defendant Graham has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Graham's Motion to Suppress.

### *B. Objections to Report and Recommendation*
#### *1. Probable cause for first search warrant*

Defendant Graham's initial objection is to Judge Zoss's conclusion that the first search warrant was supported by probable cause. "'To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause.'" *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009) (quoting *United States v. Wallace,* 550 F.3d 729, 732 (8th Cir. 2008) (internal quotations and citation omitted)). The United States Supreme Court has explained that in making a probable cause determination,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238 (1983). The Eighth Circuit Court of Appeals has recently instructed that:

---

[1](…continued)
667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

> "Whether probable cause . . . has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'" *United States v. Grant,* 490 F.3d 627, 631 (8th Cir. 2007), *cert. denied,* --- U.S. ----, 128 S. Ct. 1704, 170 L. Ed. 2d 516 (2008) (*quoting Illinois v. Gates,* 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). "When the affidavit supporting the search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched, probable cause exists." *Terry,* 305 F.3d at 822. "Accordingly, we examine the sufficiency of a search-warrant affidavit using a 'common sense' and not a 'hypertechnical' approach." *Grant,* 490 F.3d at 632 (*quoting United States v. Solomon,* 432 F.3d 824, 827 (8th Cir. 2005)).

*United States v. McArthur*, 573 F.3d 608, 613 (8th Cir. 2009).

Here, reading the supporting affidavits for the first search warrant in their entirety, the court concludes that they clearly contained information which provided a substantial basis for finding a "fair probability" that contraband or evidence of illegal activity could be found in the buildings at defendant Graham's residence. The supporting affidavit of Hancock Deputy Sheriff Robert A. Gerdes, Jr. indicates that a "concerned citizen" called him with information regarding defendant Graham's involvement in the theft of a Caterpillar 246 Turbo skid loader in 2006. The caller knew where the skid loader had been taken and when. The caller indicated that he knew this because he and another individual had helped Graham steal the skid loader. The caller told Gerdes that the skid loader could be found on Graham's property in Garner, Iowa. In addition to giving Gerdes the location of the stolen skid loader, the caller also described some identifying markings on the skid loader.

Besides detailing the theft of the skid loader, the caller also informed Gerdes about Graham's involvement in an insurance fraud scheme involving the same skid loader. The caller told Gerdes that Graham had purchased insurance on the stolen skid loader and then reported its theft to the Hancock County Sheriff's Office. The caller further told Gerdes that Graham had been paid approximately $10,000 on his insurance claim. After speaking with the caller, Gerdes corroborated some of the information provided by the caller. Gerdes confirmed that a skid loader like the one described by the caller had, in fact, been stolen, and that Graham was in possession of a skid loader that generally matched the description given by the caller. Moreover, Gerdes took several photographs of the skid loader. He then located the caller and showed him the photographs of the skid loader. The caller confirmed to Gerdes that the skid loader in the photographs was the same skid loader that the caller had helped steal. Gerdes also states in his affidavit that the Hancock County Sheriff's Office did receive a theft report from Graham concerning a Caterpillar skid loader on September 14, 2007. During the ensuing investigation, Graham was unable to provide the investigation officer with either the serial number for the skid loader or the name of the individual from whom he had purchased it. Based on these facts, the court adopts Judge Zoss's finding that the first search warrant contains probable cause to support the search. While defendant Graham argues that there was insufficient information in the search warrant application to believe that insurance records from 2007 would be located in Graham's residence, given the circumstances here, the court concludes that it would be reasonable to infer that Graham would have insurance records at his residence. *See, e.g., United States v. Hargus,* 128 F.3d 1358, 1362 (10th Cir. 1997) (holding where "receipts and other records" were described in search warrant for defendant's house that "there need not be direct evidence or personal knowledge" that the items sought are located at the place

to be searched), *cert. denied*, 118 S. Ct.1526 (1998). Accordingly, defendant Graham's first objection is overruled.[2]

## 2. *Search exceeding scope of second search warrant*

Defendant Graham's next objection is that Judge Zoss erred in not finding that law enforcement officers impermissibly exceeded the scope of the search warrant issued on April 23, 2009.[3] "The language of a search warrant must describe the items to be seized with sufficient particularity: 'the language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized.'" *United States v. Lowe,* 50 F.3d 604, 607 (8th Cir. 1995) (quoting *United States v. Saunders,* 957 F.2d 1488, 1491 (8th Cir. 1992)). The particularity requirement of a search warrant is a standard of "'practical accuracy' rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quoting *United States v. Peters*, 92 F.3d 768, 769 (8th Cir. 1996)), *cert. denied*, 128 S. Ct. 875 (2008). The search warrant here authorized the seizure of, among other things: "firearms, ammunition. . ." Prosecution

---

[2] However, even if the court were to conclude that the affidavit was insufficient, the *Leon* good-faith exception permits admission of the evidence. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Grant,* 490 F.3d at 632 (citing *Leon,* 468 U.S. at 922). Here, nothing in the record indicates that it was not reasonable for Deputy Gerdes to rely on the state magistrate's probable cause determination. Accordingly, the evidence gained from the search of Graham's residence is also admissible pursuant to the *Leon* good-faith exception.

[3] Two search warrants were issued for defendant Graham's residence on April 23, 2009. *See* Prosecution Exs. 3 and 4. While defendant Graham directs the court's attention to Prosecution Exhibit 4, the firearm which forms the basis for the charge in this case was seized pursuant to Prosecution Exhibit 3. Accordingly, the court will analyze defendant Graham's objection based on the search permitted by Prosecution Exhibit 3.

Ex. 3 at p.4. The Colt .38 detective special and boxes of ammunition found in defendant Graham's residence clearly fall within this description. Thus, the court concludes that the Colt revolver and boxes of ammunition were properly seized pursuant to the second search warrant, Prosecution Exhibit 3. Accordingly, this objection is also overruled.

### III.  CONCLUSION

Therefore, for the reasons set out above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Graham's Motion To Suppress.

**IT IS SO ORDERED.**

**DATED** this 15th day of October, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA